**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

TAMARA L. HUNDLEY,                        )
                                          )
                    Plaintiff,            )
          vs.                             )          1:08-cv-1169-SEB-TAB
                                          )
MICHAEL J. ASTRUE, Commissioner           )
 of the Social Security Administration,   )
                                          )
                    Defendant.            )


### Entry Discussing Complaint for Judicial Review

Tamara L. Hundley ("Hundley") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq.*

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

### I.  Background

Hundley filed applications for SSI and DIB on November 3, 2003, alleging an onset date of disability of October 2, 2001. Her applications were denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted and a hearing was conducted by video on August 15, 2006. Hundley appeared, accompanied by her attorney. Medical and other records were introduced into evidence. Hundley, her husband, and a vocational expert testified at the hearing. The ALJ issued a decision denying benefits on August 31, 2006. On March 16, 2007, the Appeals Council granted Hundley's request for review and remanded the case for further proceedings. The ALJ conducted another hearing by video on September 11, 2007. Hundley appeared, accompanied by her attorney. Hundley and a vocational expert testified. The ALJ issued a decision denying benefits on November 9, 2007. On June 26, 2008, the Appeals Council denied Hundley's request for review, making the ALJ's decision final. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Hundley met the insured status requirements of the Act through December 31, 2004; (2) Hundley had not engaged in substantial gainful activity since October 2, 2001, the alleged onset date; (3) Hundley had "severe" impairments including degenerative disc disease with back pain, scoliosis, hypertension, fibromyalgia, depression, history of right renal scarring and a left renal cortical cyst, history of carpal tunnel syndrome, GERD, arthritis, obesity and seizures; (4) Hundley did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) after consideration of the record, the ALJ found that Hundley had not demonstrated with credible evidence that she lacked the residual functional capacity ("RFC") to perform light and sedentary work as light and sedentary are defined function by function in the regulations at 20 C.F.R. 404. 1567 and 416.967, and this limitation to light and sedentary work was due to all her impairments combined including fibromyalgia, obesity, all other musculoskeletal pain and all impairments mentioned above; (6) Hundley was further limited by all her impairments combined including obesity and fibromyalgia and medication side-effects (dizzy, sleepy, etc.) to work that does not require climbing or work at unprotected heights, and due to musculoskeletal pain she could not perform repetitive bending/stooping, and due to all her mental impairments combined including pain, and resulting moderate problems with concentration, persistence and pace, she was limited to jobs that are unskilled, routine, and repetitive in nature; (7) Hundley was able to perform her past relevant work; (8) Hundley was born on November 14, 1970 and was a younger individual age 18-49 on the alleged disability onset date; (9) Hundley had at least a high school education and was able to communicate in English; (10) transferability of job skills was not an issue in this case; and (11) considering Hundley's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Hundley had not been under a disability as defined in the Act from October 2, 2001, through the date of the ALJ's decision.

## II. Discussion

### A. Applicable Law

To be eligible for DIB and SSI, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

The ALJ must consider whether: (1) the claimant is presently employed; (2)

the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id*. The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

## B.    Analysis

In this case, the ALJ determined that Hundley had severe impairments consisting of degenerative disc disease with back pain, scoliosis, hypertension, fibromyalgia, depression, history of right renal scarring and a left renal cortical cyst, history of carpal tunnel syndrome, GERD, arthritis, obesity and seizures, but that Hundley could perform her past relevant work and a significant number of other jobs in the national economy. Hundley argues that the ALJ erred in 1) failing to properly consider all of the evidence, instead relying on her own lay opinion, 2) making an improper credibility determination, and 3) presenting incomplete hypothetical questions to the vocational expert.

Hundley first contends that when the ALJ reviewed the evidence she made improper "lay" opinions. Specifically, Hundley contends that the ALJ did not adequately consider side-effects of her medications, including sleepiness, fatigue and dizziness. The ALJ acknowledged that Hundley testified that Flexeril caused her to be sleepy, but also that she took this medication only twice a week. (R. at 22). The ALJ noted that Hundley also attributed excessive daytime sleepiness to Elavil and Zanaflex. The ALJ concluded that those were not current medications taken by Hundley. (R. at 23). The ALJ also stated that the treatment notes did not indicate persistent complaints of side-effects from Darvocet and Flexeril. *Id.* The Commissioner reasonably responds that the record fails to document the degree of fatigue or drowsiness that was caused as a side-effect of Hundley's medications. Specifically, the Commissioner notes that the record reflects some references to complaints of fatigue, but asserts that the record does not support allegations of extreme fatigue in general or as a side-effect of her medications. At the same time Hundley criticizes the ALJ for relying on her own "lay opinion" rather than those of physicians, Hundley argues that the ALJ should have concluded that fatigue is a "common" side-effect of her medications

and that fatigue is "reasonably related" to her diagnosis of fibromyalgia. Hundley points to no opinion of record in support of such a conclusion. The court does not find that the ALJ improperly "played doctor" in relation to her evaluation of Hundley's medication side-effects.

Hundley further contends that the ALJ failed to base the RFC assessment of physical limitations on evidence of record.  Hundley cites to the Physicians Desk Reference as evidence that all of her medications cause dizziness and fatigue.  She asserts that the ALJ ignored the fact that dizziness would affect her ability to stand 6 hours a day or carry 20 pounds.  Citing all of the possible side effects of medications listed in the PDR, however, does not trump the ALJ's observation that "treatment notes do not indicate persistent complaints regarding side effects from this medication." (R. at 23). Moreover, Hundley does not point to any physician opinion of record which restricted her ability to function as a result of dizziness.

The ALJ discussed the 2002 treatment notes and clinical findings, noting no significant abnormalities. (R. at 22). The ALJ also noted that in 2003, an examination reflected limited range of motion and tenderness in the spine, and Hundley underwent a lumbar epidural steroid injection in September of that year. *Id.* A neurosurgical consult in May of 2005 indicated no tenderness in her back, normal strength and sensation, and normal reflexes. (R. at 22-23). X-rays showed mild scoliosis and an MRI showed facet arthropathy. (R. at 23). The diagnosis at that time was neck and wrist pain. *Id.* Hundley underwent a successful carpal tunnel release in August 2005. *Id.* The State Agency physicians opined in February 2004 that Hundley could perform a range of light work (sit and stand/walk six hours in an eight hour day and lift/carry 20 pounds occasionally and 10 pounds frequently), with an ability to climb, stoop, kneel, crouch, and crawl occasionally. (R. at 23, 338-45). The Commissioner responds that there is no physician opinion of record indicating that Hundley could not perform the activities determined in the ALJ's RFC assessment. Indeed, Hundley does not point to other physician opinions which reflect a more restricted RFC. The court finds that the ALJ's physical impairment RFC determrination is supported by substantial evidence.

Hundley also argues that the ALJ improperly weighed her mental impairments which affect her abilities in the areas of concentration, persistence and pace. There are two mental impairment evaluations of record: that of the State Agency Psychiatric Review (R. at 346-59); and a consultative psychologist Dr. Glover (R. at 334-37). The ALJ noted that the State Agency medical consultants found that Hundley's mental impairment was not severe. (R. at 24, 346). More specifically, the State Agency report indicated that Hundley had "mild" limitations in difficulties in maintaining concentration, persistence and pace. (R. at 356). The ALJ also acknowledged Hundley's allegations of deficits in concentration, persistence and pace but noted that such deficits were not borne out in the examination by Dr. Glover. (R. at 24). Dr. Glover opined that Hundley could attend to a simple, repetitive task continuously for a two hour period, and that Hundley kept up a "pretty good pace through the session" with genuine persistence. (R. at 337). The ALJ's conclusion that Hundley could perform the mental aspects of unskilled, routine and repetitive work is supported by substantial evidence.

Hundley asserts that employers are reluctant to hire individuals who are only sporadically available for work. She then assumes that the same would be true of an individual who could not work at a competitive pace. This argument is a nonstarter. First of all, as discussed, the ALJ reasonably found that Hundley was not substantially restricted in the areas of persistence and pace. In addition, for support of her claims concerning who employers are not likely to hire, Hundley cites to *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1115 (7th Cir. 1992), an employment discrimination case. The legal standards for such a case are not applicable in this context. Indeed, economic conditions and attitudes of employers are irrelevant when determining whether a claimant is disabled. *See* 20 C.F.R. § 416.966(c) ("We will determine that you are not disabled if your residual functional capacity and vocational abilities make it possible for you to do work which exists in the national economy, but you remain unemployed because of- (1) Your inability to get work; . . . (3) The hiring practices of employers....").

Hundley next argues that the ALJ erred in making her credibility determination. Hundley contends that the ALJ improperly determined that the minimal amount of daily activities that she could perform, her ability to drive and leave her home, supported an ability to perform work activity. She also argues that the ALJ held her to higher standard of complete and total disability when considering her testimony.

In determining Hundley's credibility, the ALJ recited the appropriate regulations. (R. at 21, citing SSR 96-7p; SSR 96-4p; and 20 C.F.R. § 404.1529; 416.929). Those regulations identify seven examples of the type of evidence the ALJ will consider, in addition to the objective medical evidence, when assessing the credibility of an individual's statements about symptoms:

(1) The individual's daily activities;
(2) The location, duration, frequency, and intensity of the individual's pain or other symptoms;
(3) Factors that precipitate and aggravate the symptoms;
(4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
(5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
(6) Any other measures the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board);
(7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

The ALJ discussed Hundley's allegations concerning her limitations and concluded that although her impairments could reasonably be expected to produce pain, her statements that her symptoms prevented her from performing all work activity were not entirely credible. (R. at 22). The ALJ discussed the various clinical findings and noted that in July 2003 limited range of motion and tenderness in the spine was documented. (R. at 22). At a consultative examination in 2005, her back was not tender and she had normal

strength and sensation. The diagnosis at that time was neck and wrist pain. (R. at 23). Hundley underwent a carpal tunnel release in August of that year. *Id.* She noted that medications helped with Hundley's pain, and that although she attributed fatigue and dizziness as side effects, the ALJ concluded that Hundley was able to perform daily activities even with the side effects. *Id.* The ALJ restricted Hundley to light and sedentary work to accommodate the allegations of pain and dizziness and fatigue. *Id.* The ALJ also further accommodated her symptoms by concluding that Hundley could not climb or work at unprotected heights or perform repetitive bending or stooping. *Id.* As to daily activities, the ALJ noted that Hundley's level of daily functioning demonstrated that she was able to sit, stand, walk, lift light items and otherwise perform work-like activities. (R. at 23). The ALJ stated that "her activity level does not demonstrate she is unable to perform and sustain light and sedentary work." *Id.* The ALJ did not hold Hundley to an improper standard. Moreover, it does not appear that the ALJ exaggerated Hundley's ability to perform limited daily activities.

A reviewing court affords a credibility finding "'considerable deference,' and [will] overturn it only if 'patently wrong.'" *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004)). "[A]n ALJ's credibility assessment will stand as long as [there is] some support in the record." *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) (internal quotation omitted). "Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed." *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) (citations omitted). The court "will uphold an ALJ's credibility determination if the ALJ gave specific reasons for the finding that are supported by substantial evidence." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). Here, the ALJ provided specific reasons for her finding that Hundley was not fully credible and those reasons are supported by the substantial evidence. The ALJ credited Hundley's reports of functional limitations to some extent in assessing her RFC. The ALJ did not ignore the applicable criteria or evidence in making her assessment. The ALJ's discussion relating to Hundley's credibility is adequate to allow the court to trace her reasoning. The court does not find that the ALJ's analysis is patently wrong, and therefore, must affirm the ALJ's credibility determination.

Hundley's final claim is that the ALJ's hypothetical questions posed to the vocational expert were incomplete, thereby invalidating the findings at steps four and five of the analysis. The court need only consider the ALJ's finding at step five because if there is no error there, the finding at step four is irrelevant.

At the hearing, the ALJ asked the vocational expert about an individual who could perform light or sedentary unskilled, routine, repetitive work with the added restrictions that the individual could not climb or work at unprotected heights and the jobs could not require repetitive bending or stooping. (R. at 73). The vocational expert testified that such an individual could perform general office clerk, information clerk, surveillance system monitor, interviewer, and messenger jobs. (R. at 25, 74-75). The ALJ properly asked the vocational expert whether his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (R. at 26, 75). The vocational expert responded in the affirmative. *Id.*

Hundley argues that she could not perform the jobs identified by the vocational

expert at step five because they required performing work at a significant pace or attaining precise set quotas or standards, as shown by the <u>Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles</u> ("SCO"). Hundley relies on Social Security Ruling ("SSR") 00-4p, which requires an ALJ to ask about any possible conflict between the vocational expert's testimony and the DOT, and if the testimony appears to conflict with the DOT, the ALJ should obtain a reasonable explanation for the apparent conflict.  SSR 00-4p.  Given the undisputed fact that the ALJ did inquire as to the existence of any conflict and no conflict was identified, Hundley must argue that the alleged conflicts were "obvious enough that the ALJ should have picked up on them without any assistance, for SSR 00-4p requires only that the ALJ investigate and resolve *apparent* conflicts between the VE's evidence and the DOT." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (citing SSR 00-4p and *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006)).

Hundley argues that there were "apparent" conflicts between the vocational expert testimony and the DOT. Specifically, she alleges that the vocational expert identified mainly factory-type work which she contends would be dangerous for someone with severe fatigue. She also asserts that many of the jobs require frequent use of the hands which Hundley could not perform given the combination of all of her impairments. Hundley has not shown that apparent conflicts exist in the sense contemplated by the regulations. Hundley's arguments lack sufficient specificity as to particular jobs and what the DOT provides. Moreover, not all of the jobs identified are factory-type jobs. Several are general office and information clerks. Hundley's contention that she has substantial limitations in the use of her hands is not supported by the record, especially after she received carpal tunnel release surgery. Under these circumstances, substantial evidence supports the ALJ's reliance on the vocational expert's testimony that there were jobs that existed in significant numbers in the economy that Hundley could perform. *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (no error when any conflict between the DOT and vocational expert testimony was not "obvious").

As noted above, the court's role in this case is not to attempt a *de novo* determination of Hundley's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence. If the ALJ's view of the evidence is supported by substantial evidence, the court must affirm the decision. "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (internal quotation omitted). The court is "not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

"An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007). In this case, the ALJ sufficiently articulated her assessment of the evidence to enable the court to "trace the path of [her] reasoning." *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (internal quotation omitted). Accordingly, because substantial evidence supports the ALJ's evaluation of Hundley's impairments, the ALJ's decision must be affirmed.

## III.  Conclusion

There was no reversible error in the assessment of Hundley's application for DIB and SSI. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. Under these circumstances, Hundley is not entitled to relief in this action. Hundley's motion for summary judgment (dkt 17) is **denied**. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: ___12/15/2009___

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana